FILED
2021 SEP 21 PM 3:03
CLERK
U.S. DISTRICT COURT

## THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| FIREHOLE RIVER CAPITAL, LLC,<br><br>Plaintiff,<br><br>v.<br><br>SUPURVA HEALTHCARE GROUP, INC.;<br>and JOHN D. MURPHY JR.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART [7] DEFENDANTS' MOTION TO DISMISS**<br><br>Case No. 2:21-cv-00153-DBB<br><br>District Judge David Barlow |

Firehole River Capital, LLC (Firehole) brought an action against Supurva Healthcare Group, Inc. and John D. Murphy Jr. (Supurva) for breach of contract, fraud, and a preliminary injunction.[1] Defendants moved to dismiss on the basis of lack of personal jurisdiction, lack of ripeness, and failure to state a claim.[2] Because all of Plaintiff's claims fail as a matter of law except the claim for breach of contract, Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Firehole is a Utah limited liability company with its principal place of business in Salt Lake City.[3] Defendant Supurva is a Delaware corporation with its principal place of business in New York.[4] Defendant Murphy is an individual living in New York.[5] On July 22, 2015, Supurva

---

[1] *See* Complaint, ECF No. 5-1 at 5–8.
[2] Defendants' Motion to Dismiss, ECF No. 7.
[3] ECF No. 5-1 at ¶ 2.
[4] *Id.* at ¶ 3.
[5] *Id.* at ¶ 4.

signed an alleged contract with Firehole titled "Convertible Promissory Note."[6] The note gives its holder the right to convert any or all principal amounts owed to "fully paid and non-assessable shares of Common Stock" in Supurva.[7] The note also specifies that Supurva must reserve a sufficient number of shares to provide for the issuance of Common Stock if the conversion option of the note is exercised.[8] After Supurva signed the note, Firehole alleges that it sent Supurva $29,950.[9]

In February of 2021, Plaintiff alleges that a representative from Supurva's stock transfer agent told Firehole that Supurva had only reserved 75 shares of Common Stock, amounting to $3.75.[10] If true, Firehole alleges that this means that Supurva is not meeting its obligation to reserve the requisite amount of stock under the terms of the note.[11] Firehole sent Supurva two emails requesting more information regarding the stock reserves.[12] After reviewing its corporate records, Murphy responded, requesting information pertaining to the authenticity of the note before Supurva released more information or allowed for the conversion of the note.[13] Supurva responded that it has no record of the note.[14] Consequently, Firehole brought this action against Supurva and Murphy for breach of contract, fraud, and a preliminary injunction.

---

[6] *Id.* at ¶ 8.
[7] *Id.* at ¶ 12.
[8] *Id.* at ¶ 14.
[9] *Id.* at ¶ 9.
[10] *Id.* at ¶¶ 15–17.
[11] *Id.*
[12] Murphy Decl., ECF No. 7, Ex. A at 2.
[13] *Id.* at 2–3.
[14] *Id.* at 3.

**STANDARD**

Dismissal is warranted under Federal Rule of Civil Procedure 12(b)(2) if the court lacks personal jurisdiction over a defendant.[15] Plaintiff has the burden of showing that the court has personal jurisdiction over a defendant, but when there has been no evidentiary hearing on jurisdiction, the Plaintiff need only make a prima facie showing of personal jurisdiction to defeat a motion to dismiss.[16] The court must resolve all factual disputes in favor of the plaintiff regarding that prima facie showing and must treat well-pled factual allegations in the complaint as true, unless they are disputed by a declaration.[17]

A motion to dismiss for lack of ripeness implicates the subject matter jurisdiction of the court and is thus treated as a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.[18] Therefore, the plaintiff must allege facts that demonstrate that the dispute is ripe and appropriate for judicial resolution.[19]

Finally, dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when the complaint, standing alone, is legally insufficient to state a claim on which relief may be granted.[20] Each cause of action must be supported by sufficient, well-pled facts to be plausible on its face.[21] In reviewing a complaint on a Rule 12(b)(6) motion to dismiss, factual allegations are accepted as true and reasonable inferences are drawn in a light most favorable to the plaintiff.[22] But the court disregards "assertions devoid of factual allegations" that are nothing

---

[15] Fed. R. Civ. P. 12(b)(2).
[16] *Benton v. Cameco Corp.*, 375 F.3d 1070, 1074 (10th Cir. 2004).
[17] *Id.*
[18] *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1498–99 (10th Cir. 1995).
[19] *Id.* at 1499.
[20] Fed. R. Civ. P. 12(b)(6).
[21] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
[22] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

more than "conclusory" or "formulaic recitation[s]" of the law.[23] When evaluating a 12(b)(6)

motion to dismiss, the court may consider "not only the complaint itself, but also attached

exhibits and documents incorporated into the complaint by reference."[24]

## DISCUSSION

**I.   The court will not convert Defendants' motion to dismiss into a motion for summary judgment.**

As a preliminary matter, Firehole requests that Defendants' motion to dismiss be

converted into a motion for summary judgment because Defendants introduced new evidence in

the form of an SEC filing attached to their motion as an exhibit.[25] In reply, Defendants argue that

facts subject to judicial notice can be considered in a Rule 12(b)(6) motion without converting

the motion to one for summary judgment and "one well-established category of documents of

which a court can take judicial notice are 'facts which are a matter of public record,' which

include SEC filings."[26]

In general, a court may consider exhibits attached to a complaint when ruling on a motion

to dismiss under Rule 12(b)(6), but consideration of material attached to a motion to dismiss

requires the court to convert the motion into one for summary judgment and afford the parties an

opportunity to present relevant evidence.[27] Additionally, facts subject to judicial notice may be

considered in a motion to dismiss without converting it into a motion for summary judgment, but

documents of public record such as SEC filings "may only be considered to show their contents,

---

[23] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009).

[24] *Smith v. United States*, 561 F.3d 1090, 98 (10th Cir. 2009) (citations omitted).

[25] ECF No. 9 at 8–9.

[26] Defendants' Reply in Support of Motion to Dismiss, ECF No. 13 at 9–10.

[27] *Tal v. Hogan*, 453 F.3d 1244, 1264–65 n.24 (10th Cir. 2006).

not to prove the truth of the matters asserted therein."[28] As such, in ruling on Defendants' motion

to dismiss under Rule 12(b)(6), the court will consider the exhibits attached to the complaint.

The court will also consider the SEC filings that Defendants submit as Exhibit B to the Motion to

Dismiss, but only to show their contents, not for the truth of the matter asserted. The court can

consider these documents without converting the motion into a motion for summary judgment.

In ruling on a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), a

court may consider affidavits and declarations presented by the parties.[29] And when considering

a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the court may rely

on affidavits or other documents in resolving the motion without converting the motion into a

motion for summary judgment.[30] Thus, in resolving Defendants' motions to dismiss for lack of

personal jurisdiction and lack of ripeness, the court will consider the exhibits attached to the

complaint as well as the declarations attached to Defendants' motion and Firehole's response.

## II.  This court lacks personal jurisdiction over Defendant Murphy because Murphy lacks minimum contacts with Utah.

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to

bind a nonresident defendant to a judgment of its courts."[31] Utah's long-arm statute extends

"jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause

of the Fourteenth Amendment. . . ."[32] Thus, the personal jurisdiction analysis here is a single due

process inquiry.[33]

---

[28] *See id.* (quoting *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)).
[29] *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).
[30] *Los Alamos Study Grp. v. U.S. Dep't of Energy*, 692 F.3d 1057, 1063–64 (10th Cir. 2012).
[31] *Walden v. Fiore*, 571 U.S. 277, 283 (2014).
[32] Utah Code Ann. § 78B-3-201(3).
[33] *See Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017).

Due process requires that the defendant "purposefully established minimum contacts within the forum state" and that the "assertion of personal jurisdiction would comport with 'fair play and substantial justice.'"[34] The minimum contacts test for specific personal jurisdiction requires: first, that the defendant has purposefully directed its activities at residents of the forum state; and second, that the plaintiff's injuries arose out of the defendant's forum-related activities.[35]

The purposeful direction requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, . . . or of the unilateral activity of another party or a third person."[36] Three frameworks courts use to determine whether an out-of-state defendant's activities satisfy the purposeful direction requirement are "(1) continuing relationships with forum state residents ('continuing relationships'); (2) deliberate exploitation of the forum state market ('market exploitation'); and (3) harmful effects in the forum state ('harmful effects')."[37] While an out-of-state defendant's direct communications with forum-state residents provide "some evidence suggesting purposeful direction,"[38] "phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts."[39] In this case, Firehole alleges that the only contacts Defendant Murphy purposefully directed at Utah are

---

[34] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)).
[35] *Old Republic*, 877 F.3d at 904.
[36] *Burger King*, 471 U.S. at 475 (internal quotations and citations omitted).
[37] *Old Republic*, 877 F.3d at 905.
[38] *Id.*
[39] *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1077 (10th Cir. 1995).

the emails that Murphy sent to Firehole "on several occasions."[40] Firehole claims that these

emails were "directed to Firehole and designed to frustrate Firehole's recovery."[41]

Murphy's conduct does not establish purposeful direction under either of the first two

frameworks (continuing relationships or market exploitation). The purposeful direction

requirement ensures that a defendant will not be required to litigate in a foreign court purely

based on the unilateral activity of another party.[42] In this case, Murphy had no contacts with the

state of Utah before he received an email from Firehole's representative.[43] Simply replying to

these unsolicited emails does not evidence that Murphy, as an individual, contemplated

continuing relationships and obligations with the citizens of Utah.[44] Murphy did not have any

prior negotiations or contemplate any future consequences with Firehole; he entered into no

contract with Firehole and had no course of dealing with Firehole outside of the one chain of

email correspondence. Furthermore, Murphy did not individually deliberately exploit the forum

state market—there is no evidence that Murphy engaged in any business in Utah.[45]

In the absence of continuing relationships or market exploitation, purposeful direction

can be established "when an out-of-state defendant's *intentional* conduct targets and has

substantial harmful effects in the forum state."[46] But "the plaintiff cannot be the only link

---

[40] Memorandum Opposing Supurva's Motion to Dismiss, ECF No. 9 at 4. The record does not support the allegation that Murphy emailed Firehole "on several occasions." There is only evidence of one email from Murphy to Firehole's representative. Murphy Declaration, ECF No. 7, Ex. A at ¶ 16.
[41] *Id.*
[42] *Burger King*, 471 U.S. at 475.
[43] Murphy Declaration, ECF No. 7, Ex. A at ¶ 6.
[44] Even if Supurva may have contemplated continuing obligations with Firehole through negotiation of a promissory note, there is no evidence that Murphy contemplated such continuing obligations as an individual.
[45] *See id.*
[46] *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 907 (10th Cir. 2017) (emphasis in original) (citing *Calder v. Jones*, 465 U.S. 783, 790–91 (1984)).

between the defendant and the forum"[47]—in *Calder v. Jones*,[48] the Supreme Court found purposeful direction based on harmful effects where the defendants relied on phone calls to forum state sources for information in an allegedly libelous article, wrote a story about plaintiff's activities in the forum state, and caused reputational injury in the forum state.[49] In short, the Court found ample contacts with the forum state that were independent from the defendants' relationship with the plaintiff.

No such contacts exist here. Even though Firehole argues that Murphy committed fraud by replying to Firehole's emails,[50] the alleged harmful effects of Murphy's conduct are limited to the relationship between Firehole and Murphy. Unlike in *Calder*, here Murphy engaged in no external contact with the forum state and caused no broader injury in the forum state independent from the alleged direct injury to the Plaintiff. As the Supreme Court explained in *Walden v. Fiore*, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."[51] Firehole has shown no more connection between Murphy and Utah than an email responding to Firehole and an alleged harm suffered by a resident of the forum state. Thus, Firehole has not carried its burden to make a prima facie showing of personal jurisdiction and dismissal of the claim against Murphy is appropriate under Rule 12(b)(2).

---

[47] *Walden v. Fiore*, 571 U.S. 277, 285 (2014).
[48] 465 U.S. 783 (1984).
[49] *See Walden*, 571 U.S. at 287 ("The crux of *Calder* was that the reputation-based 'effects' of the alleged libel connected the defendants to California, not just to the plaintiff.").
[50] ECF No. 5-1 at ¶¶ 25–35.
[51] *Walden*, 571 U.S. at 290.

### III.  Firehole's claim is ripe for judicial resolution.

Defendants argue that Firehole's action is not yet ripe for judicial review because the complaint does not allege that Firehole lent all the money required under the alleged note, Firehole has not attempted to exercise its conversion rights, and the parties would suffer no hardship from withholding judicial review.[52] "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."[53] In the Tenth Circuit, courts analyze ripeness by "examining both the fitness of the issues raised . . . for judicial review and the hardship to the parties from withholding review."[54]

The question of whether an issue is fit for judicial review turns on whether resolution of the issue requires facts that are not yet sufficiently developed.[55] The central focus of this inquiry is "whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all."[56] Defendants argue that Firehole's breach of contract claim is not yet sufficiently developed factually because the complaint "contains no fact to establish that it lent all the money required under the alleged Note, that Supurva failed to pay under the terms of the note, . . . or that Firehole has even attempted to exercise its conversion rights under the Note yet."[57] But Firehole's exercise of its conversion rights would not develop more facts that are required to resolve the controversy. According to Firehole's complaint, the

---

[52] ECF No. 7 at 16–17.

[53] *Texas v. United States*, 523 U.S. 296, 300 (1998) (quotations omitted).

[54] *Awad v. Ziriax*, 670 F.3d 1111, 1124 (10th Cir. 2012) (quoting *United States v. Vaquera-Juanes*, 638 F.3d 734, 736–737 (10th Cir. 2011)).

[55] *Awad*, 670 F.3d at 1124.

[56] *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995) (quotations omitted).

[57] ECF No. 7 at 16. Defendants also argue that "there are no allegations that Supurva ever failed to pay back the money it supposedly borrowed." ECF No. 7 at 2. The argument is baseless, as the Complaint's very first allegation is that "Supurva failed to pay a $32,500 debt." ECF No. 5-1 at 1.

breach of contract has already occurred—Firehole alleges that Supurva's failure to maintain a certain amount of reserve stock is an event of default that amounts to breach of contract.[58] Future events need not occur for a court to decide whether a contract existed and was breached. Thus, the issues presented in this case are fit for judicial review.

The second step of the ripeness test considers the hardship from withholding judicial review by asking "whether the challenged action creates a direct and immediate dilemma for the parties."[59] Defendants face no hardship from withholding judicial review—indeed, this is precisely what they want—but Firehole alleges that it "has an offer to buy a portion of the Note, contingent on the shares being reserved in Firehole's name" and that it is "unable to sell the Note or portions of the Note without the contractual reserve."[60] This is a "direct and immediate dilemma" for Firehole. Regardless of whether Firehole has exercised its conversion rights, it alleges that Supurva is in breach of contract and that that breach is preventing Firehole from selling the promissory note. The case is ripe for judicial review because the issues do not require further factual development for resolution and because Firehole would face a direct and immediate dilemma if the court withheld review. Accordingly, dismissal is not warranted for lack of ripeness under Rule 12(b)(1).

### IV. Defendants' motion to dismiss is denied on the contract claim but granted on the fraud and preliminary injunction claims.

Defendants argue that each of Firehole's three causes of action fails to state a claim upon which relief may be granted and thus dismissal is appropriate under Rule 12(b)(6).[61] Firehole

---

[58] ECF No. 5-1 at ¶ 21.
[59] *Awad*, 670 F.3d at 1125 (quoting *New Mexicans for Bill Richardson*, 64 F.3d at 1499).
[60] ECF No. 5-1 at ¶¶ 23–24.
[61] ECF No. 7 at 17.

brings claims for breach of contract,[62] fraud,[63] and preliminary injunction.[64] The court considers these claims in turn.

### A.  Firehole alleges sufficient facts to state a plausible breach of contract claim.

To sufficiently plead a breach of contract claim, a plaintiff must allege "(1) a contract, (2) performance by the party seeking recovery, (3) breach of contract by the other party, and (4) damages."[65] Here, Defendants argue that Firehole's breach of contract claim is insufficient because the promissory note attached to the complaint is facially not a valid contract and because Firehole has not alleged damages.[66]

Under Utah law, a valid contract requires "a meeting of the minds on the integral features of [the] agreement."[67] In this case, the promissory note that Firehole attached to the complaint states that:

> **FOR VALUE RECEIVED**, a Supurva Healthcare Group, Inc., a Delaware corporation, . . . hereby promises to pay to the order of Firehole River Capital, LLC a Utah limited liability company, or its registered assigns (the "Holder") the sum of $32,500.00 together with any interest as set forth herein, on January ___, 2016 (the "Maturity Date"), and to pay interest on the unpaid principal balance hereof at the rate of twelve percent (12%) (the "Interest Rate") per annum from the date hereof (the "Issue Date") until  the same becomes due and payable, whether at maturity or upon acceleration or by prepayment or otherwise.[68]

Defendants make three arguments as to why the promissory note makes clear that a valid contract does not exist—first, that the note is not executed, as it lacks a signature from a Firehole

---

[62] ECF No. 5-1 at ¶¶ 20–24.
[63] *Id.* at ¶¶ 25–35.
[64] *Id.* at ¶¶ 36–42.
[65] *Am. W. Bank Members, L.C. v. State*, 342 P.3d 224, 230–231 (Utah 2014).
[66] ECF No. 7 at 18–19.
[67] *Jones v. Mackey Price Thompson & Ostler*, 355 P.3d 1000, 1009 (Utah 2015) (quoting *Prince, Yeates & Geldzahler v. Young*, 94 P.3d 179, 183 (Utah 2004)).
[68] ECF No. 5-1, Ex. A at 1.

representative; second, that the maturity date is left undefined under the note; and third, that the note, when taken together with the bank statement attached to the complaint as Exhibit B, establishes that there was no agreement as to the amount of principal.

Turning to Defendants' first argument, even though the note is not signed by a Firehole representative, it is signed by Supurva's chief executive officer.[69] Thus, it is evident that a representative from Supurva ratified the promissory note as written. Drawing inferences in the light most favorable to the plaintiff, the signature of Supurva's representative could evidence a meeting of the minds as to the note. Furthermore, a signature from a Firehole representative is not necessary for Firehole to allege that there was a valid contract; the promissory note is signed by Supurva, the party against which enforcement is sought.

Defendants' second argument is that Firehole has failed to plead a claim because the maturity date is left undefined in the note, which Defendants claim is "one of the most key terms in a convertible note agreement. . . ."[70] Instead of noting a specific maturity date, the promissory note states that the maturity date shall be "on January ____, 2016."[71] But while the exact day is left unspecified, the month of the maturity date is exact. The maturity date could be read as "no later than January 31st, 2016." Unlike the cases in which Utah courts have found that a contract was missing an essential term, the contract in this case still includes definite language. The note specifies that the maturity date is to be January 2016, and drawing all reasonable inferences in the light most favorable to the plaintiff leads to the conclusion that the maturity date could have

---

[69] *Id.* at 16.
[70] ECF No. 7 at 18.
[71] ECF No. 5-1, Ex. A at 1.

been no later than January 31st, 2016. The lack of an exact day as a maturity date does not defeat Firehole's breach of contract claim.

Defendants' third argument is that the note, when taken together with the bank statement attached to the complaint as Exhibit B, establishes that there was no agreement as to the amount of principal because the note promises payment of $32,500, while the bank statement shows payment of $29,950.[72] But the bank statement is extrinsic evidence that does not factor into whether the parties had a meeting of the minds with respect to the amount paid at the time they executed the contract. It is possible that both parties agreed to a promissory note for $32,500 and that a party breached the contract by sending less than the agreed-upon amount. The four corners of the promissory note contain a definite amount which, drawing reasonable inferences in the light most favorable to the Plaintiff, indicates that the parties could have agreed on an essential element of the promissory note at the time of execution, regardless of later actions. Thus, the discrepancy between the promissory note and the bank statement does not defeat Firehole's breach of contract claim.

Defendants' final argument is that Firehole cannot allege compensable damages because Firehole's difficulty in selling the note to a third party has yet to result in a lost sale. Firehole alleges that it "has an offer to buy a portion of the Note, contingent on shares being reserved in Firehole's name" and that "Firehole's damages are that it is unable to sell the Note or portions of the note without the contractual reserve."[73] Thus, Firehole plausibly alleges facts that it wants to sell the promissory note, but cannot because Supurva is in breach by not reserving the

---

[72] *Id.*; ECF No. 5-1, Ex. B at 2.
[73] ECF No. 5-1 at ¶¶ 23–24.

appropriate number of shares. Drawing inferences in the light most favorable to the Plaintiff, this is sufficient to allege a lost sale based on a breach of contract by Supurva.

### B. Firehole has not pled the fraud claim against Supurva with particularity.

The court will only consider Firehole's fraud claim against Supurva, as it has already determined that it lacks personal jurisdiction over Defendant Murphy. Claims of fraud are held to a heightened pleading standard under Rule 9(b), which states that a plaintiff "must state with particularity the circumstances constituting fraud or mistake."[74] "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where and how' of the alleged fraud, and must set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof."[75] To state a claim for fraud under Utah law, a plaintiff must allege: (1) that a representation was made; (2) concerning a presently existing material fact; (3) which was false; and (4) which the representor either (a) knew to be false or (b) made recklessly, knowing that there was insufficient knowledge upon which to base such a representation; (5) for the purpose of inducing the other party to act upon it; and (6) that the other party, acting reasonably and in ignorance of its falsity; (7) did, in fact, rely upon it; and (8) was induced to act; (9) to that party's injury and damage.[76]

In this case, Firehole falls short of meeting the pleading standard to sustain its fraud claim. In the complaint, Firehole alleges that Supurva made misrepresentations in the promissory note that it "would reserve shares specifically to convert debt into stock; when precedent

---

[74] Fed. R. Civ. P. 9(b).

[75] *United States* ex rel. *Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726–27 (10th Cir. 2006) (internal citations omitted), *abrogated on other grounds by Cochise Consultancy, Inc. v. United States* ex rel. *Hunt*, 139 S. Ct. 1507 (2019).

[76] *State v. Apotex Corp.*, 282 P.3d 66, 80 (Utah 2012).

conditions were met, it would convert debt into stock; and that these certain conditions would exist in perpetuity or until it fully repaid its debt."[77] But in Utah, a "misrepresentation of intended future performance is not a 'presently existing fact' upon which a claim for fraud can be based unless a plaintiff can prove that the representor, at the time of the representation, did not intend to perform the promise and made the representation for the purpose of deceiving the promisee."[78] Firehole has not pled sufficient facts that Supurva and Murphy made the representations without the intent to perform the promise or for the purpose of deception. Firehole alleges that Supurva and Murphy made these representations "knowing they were false, or recklessly and without regard for their truth"[79] and that "Supurva made these representations to induce Firehole into lending Supurva money."[80] But these are conclusory allegations that the court does not accept as true for the purposes of resolving the motion to dismiss.[81] Simply put, Firehole fails to allege specific facts that indicate that Supurva or Murphy intended to deceive Firehole when executing the promissory note. Firehole's complaint does not sufficiently allege a claim of fraud under Rule 9(b) and Utah law, and dismissal of this claim is proper under Rule 12(b)(6).

### C. Firehole's claim for a preliminary injunction fails because a preliminary injunction is a remedy, not a cause of action.

Firehole's final claim is for a "preliminary injunction against Supurva."[82] But a preliminary injunction is a remedy, not an independent cause of action.[83] Injunctive relief is

---

[77] ECF No. 5-1 at ¶ 26.
[78] *Andalex Res., Inc. v. Myers*, 871 P.2d 1041, 1047 (Utah Ct. App. 1994).
[79] *Id.* at ¶ 27.
[80] *Id.* at ¶ 28.
[81] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009).
[82] ECF No. 5-1 at 7.
[83] *See, e.g.*, *Teague v. Christian*, No. 4:18-cv-00052-DN-PK, 2019 WL 4686717, at *8 (D. Utah 2019).

available as a remedy only where a party prevails on a separate legal theory.[84] Here, Firehole pleads "preliminary injunction" as an independent cause of action without identifying an underlying legal theory as to why they are entitled to such relief. Firehole does point out that the promissory note specifies that "the Holder [of the note] shall be entitled, in addition to all other available remedies at law or in equity, . . . to an injunction . . . preventing or curing any breach."[85] But injunctive relief is a remedy that would only be granted if Firehole prevails on a legally cognizable cause of action. As such, dismissal of Firehole's claim for a preliminary injunction is appropriate under Rule 12(b)(6).

## ORDER

For the reasons stated above, Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART. The Complaint's Second Cause of Action is dismissed without prejudice. The Complaint's Third Cause of Action is dismissed with prejudice.

Signed September 21, 2021.

BY THE COURT

_____
David Barlow
United States District Judge

---

[84] *Id.*
[85] ECF No. 5-1 at ¶ 40.